UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| MAX MALLORY, individually and on behalf of all others similarly situated, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiff, | | |
| v. | | No. 3:23-CV-00436-JRG-DCP |
| CONSUMER SAFETY TECHNOLOGY, LLC d/b/a INTOXALOCK, | | |
| Defendant. | | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Consumer Safety Technology, LLC's Motion to Compel Arbitration and to Dismiss the Amended Complaint or in the Alternative to Stay Proceedings Pending Resolution of Arbitration [Doc. 24], Consumer Safety Technology's Memorandum in Support [Doc. 25], Plaintiff Max Mallory's Response [Doc. 30], and Consumer Safety Technology's Reply [Doc. 31]. For the reasons herein, the Court will grant Consumer Safety Technology's motion and compel arbitration of Mr. Mallory's claims.

### I. BACKGROUND

After pleading guilty to drunk driving in 2019, Plaintiff Max Mallory sought the reinstatement of his driver's license, and the State of Tennessee informed him that, to regain his driving privileges, he had to obtain an ignition interlock device and drive on a restricted license for two years. [Pl.'s Decl., Doc. 30-1, ¶¶ 3–5]. According to Mr. Mallory, the ignition interlock device "is installed in a person's vehicle," and through breath samples, it analyzes the driver's blood-alcohol concentration and prevents the vehicle from starting if the driver's blood-alcohol concentration is outside the legal limit. [Am. Compl., Doc. at 22, ¶¶ 17–18, 31]. Mr. Mallory

contracted with Defendant Consumer Safety Technology, LLC to lease an ignition interlock device, [Pl.'s Decl. ¶¶ 6–7], and over roughly two years, he entered into eight lease agreements with Consumer Safety Technology, with those lease agreements ranging in duration from one month to six months. [*Id.* ¶¶ 8, 12].

The eighth lease—unlike any of the previous seven leases—contains an arbitration provision, which consists of multiple paragraphs and, in pertinent part, states:

**18. BINDING ARBITRATION AND CLASS ACTION WAIVER**

18.1 YOU AND CST AGREE TO RESOLVE DISPUTES ONLY BY ARBITRATION OR IN SMALL CLAIMS COURT AS DISCUSSED BELOW. YOU UNDERSTAND THAT BY THIS AGREEMENT YOU ARE GIVING UP THE RIGHT TO BRING A CLAIM IN COURT OR IN FRONT OF A JURY. AN ARBITRATOR CAN AWARD YOU THE SAME DAMAGES AND RELIEF, AND MUST HONOR THE SAME TERMS IN THIS LEASE, AS A COURT WOULD, BUT ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN RULES APPLICABLE TO COURT, INCLUDING THE REVIEW OF ANY DECISION OR RESULT. If you do not want to be subject to this arbitration provision, you may opt out. To do so, within 30 days of the date of your installation of the Device, you must send notice to Consumer Safety Technology, LLC, Attn: Legal Department, 11035 Aurora Ave., Des Moines, IA 50322, stating your intent to opt out of this arbitration provision, as well as your name, mailing address, and account number. Should you not opt out of this arbitration provision within the 30-day period, you and CST shall be bound by the terms of this arbitration provision.[1]

18.2 You and CST agree that the Federal Arbitration Act applies to this Lease.

18.3 You and CST agree that, except for small claims court cases, any dispute that in any way arises out of or relates to this Lease, the Device or any other products or services you receive from us, or from any advertising for any of our or our affiliates' products or services, or from our efforts to collect amounts you may owe us under this Lease, for the Device or for any other products or services you receive from us, including any disputes you have with our employees or agents, will be resolved by arbitration by one or more neutral arbitrators before the American Arbitration Association ("AAA") you can also bring any issues you may have to the attention of federal, state, or local government agencies, and if the law allows,

---

[1] Both parties agree that Mr. Mallory did not opt out of the arbitration provision. [Pl.'s Decl. ¶ 16; Woods's Decl., Doc. 25-1, ¶ 9].

2

they can seek relief against us for you. This agreement to arbitrate continues to apply even after you have stopped receiving products and services from us.

18.4 Unless you and CST agree otherwise, the arbitration will take place in the state and county in which you reside. The AAA's consumer arbitration rules will apply. You can get procedures, rules and fee information from the AAA, which you can find at www.adr.org.

. . . .

18.6 THIS AGREEMENT DOES NOT ALLOW CLASS OR COLLECTIVE ARBITRATIONS EVEN IF THE AAA PROCEDURES OR RULES WOULD. NOTWITHSTANDING ANY OTHER PROVISION OF THIS LEASE, THE ARBITRATOR MAY AWARD MONEY OR INJUNCTIVE RELIEF ONLY IN FAVOR OF THE INDIVIDUAL PARTY SEEKING RELIEF AND ONLY TO THE EXTENT NECESSARY TO PROVIDE RELIEF WARRANTED BY THAT PARTY'S INDIVIDUAL CLAIM. NO CLASS, REPRESENTATIVE OR PRIVATE ATTORNEY GENERAL OR GENERAL INJUNCTIVE RELIEF THEORIES OF LIABILITY OR PRAYERS FOR RELIEF MAY BE MAINTAINED IN ANY ARBITRATION HELD UNDER THIS AGREEMENT. ANY QUESTION REGARDING THE ENFORCEABILITY OR INTERPRETATION OF THIS PARAGRAPH SHALL BE DECIDED BY A COURT AND NOT THE ARBITRATOR.

[Eighth Lease Agreement, Doc. 25-2, at 9].[2]

Shortly before the eighth lease agreement's expiration in April 2022, the State reinstated Mr. Mallory's driver's license and authorized the removal of the ignition interlock device from his vehicle. [Pl.'s Decl. ¶¶ 20–21]. Mr. Mallory then filed this class-action lawsuit in this Court against Consumer Safety Technology, claiming that it misrepresented the costs associated with its ignition interlock device, that it breached the leases and violated state law by overcharging him and levying excessive fees,[3] and that its ignition interlock device damaged his vehicle's

---

[2] The Court will refer to these collective arbitration provisions in paragraph 18 as the arbitration agreement.
[3] For example, Mr. Mallory alleges that Consumer Safety Technology's "lockout fee," i.e., the fee that it allegedly charges when its ignition interlock device locks out the driver from the vehicle because he has "fail[ed] the breathalyzer test" or "for reasons other than failing the breathalyzer test," [Am. Compl. ¶ 80], is "more than double the amount permitted by Tennessee law," [id. ¶ 71].

3

battery and required him to purchase at least five new batteries over the leases' durations.[4] [Am. Compl. at 22–38]. He brings various state-law claims against Consumer Safety Technology, including claims for breach of contract, fraud, and unjust enrichment, [*id.* at 46–60]—all of which he packages into a class-action lawsuit under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1711 *et seq.*[5]

In response to Mr. Mallory's suit, Consumer Safety Technology petitions the Court to compel Mr. Mallory to "pursue [his claims] in individual arbitration," invoking the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.* [Def.'s Mot. to Compel at 1]. Mr. Mallory opposes the motion. Having carefully considered the parties' arguments, the Court is now prepared to rule on the motion.

## II. Legal Standard

The "primary substantive provision" of the FAA states that an arbitration provision in a commercial contract is "valid, irrevocable, and enforceable" except on "such grounds as exist at law or in equity for the revocation of any contract." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (quoting 9 U.S.C. § 2). The Supreme Court has described this provision "as reflecting both a 'liberal federal policy favoring arbitration' and the 'fundamental principle that arbitration is a matter of contract.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal quotation and quotation omitted). In keeping

---

[4] According to Mr. Mallory, Consumer Safety Technology's ignition interlock device is "'powered on' for twenty-four (24) hours a day, seven (7) days a week, and thus, constantly drain[s] and damage[s] the car battery." [*Id.* ¶ 64].

[5] "The [FAA] is something of an anomaly in the field of federal-court jurisdiction. It creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate, yet it does not create any independent federal-question jurisdiction under 28 U.S.C. § 1331 . . . or otherwise." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983). An independent jurisdictional basis is therefore a prerequisite to a federal court's ability to review a petition to compel arbitration. *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581–82 (2008). The CAFA provides the Court with "original jurisdiction" to hear a "class action" if the class has a hundred or more members, the parties are minimally diverse, and the "matter in controversy exceeds the sum or value of $5,000,000." 28 U.S.C. § 1332(d)(2), (d)(2)(A), (d)(5)(B).

4

with this provision's language, district courts, when addressing motions to compel arbitration under the FAA, are "limited to determining whether the parties entered into a valid agreement to arbitrate," *Burden v. Check into Cash of Ky., LLC*, 267 F.3d 483, 487 (6th Cir. 2001) (citation omitted), and in making this limited determination, must abide by the "well-established rule that any doubts regarding arbitrability should be resolved in favor of arbitration," *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003) (citing *Moses H. Cone*, 460 U.S. at 24–25); *see Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985) (stating that "[t]he preeminent concern of Congress in passing the Act was to enforce private agreements into which parties had entered, and that concern requires that [courts] rigorously enforce agreements to arbitrate").

The strong federal policy in favor of arbitration, however, is "not an absolute one" because, again, an arbitration agreement is exactly that—an agreement between parties—and it therefore remains "a matter of consent, not coercion." *Albert M. Higley Co. v. N/S Corp.*, 445 F.3d 861, 863 (6th Cir. 2006) (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)). "[A]s with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).

If the Court determines that an arbitration agreement is valid, it must order the parties to arbitration. 9 U.S.C. § 4; *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002). If it determines, however, that the validity of the arbitration agreement is "in issue," 9 U.S.C. § 4, the parties must then proceed to a trial to resolve their dispute, *Great Earth*, 288 F.3d at 889. A trial is necessary only if the party opposing arbitration shows the existence of a genuine issue of material fact as to the arbitration agreement's validity. *Id.*; *see Green Tree Fin. Corp.-Ala. v.*

5

*Randolph*, 531 U.S. 79, 91 (2000) (stating that the party challenging the arbitration agreement has the burden of establishing that the claims at issue are not arbitrable). "The required showing mirrors that required to withstand summary judgment in a civil suit." *Great Earth*, 288 F.3d at 889 (citing *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 129–30 (2d Cir. 1997), *cert. denied*, 522 U.S. 948 (1997))). The inquiry, therefore, that the Court must make is whether the evidence "is such that a reasonable finder of fact could conclude that no valid agreement to arbitrate exists." *Id.* (citation omitted). When making this inquiry, the Court views the facts and draws all reasonable inferences in the light most favorable to the nonmoving party—that is, the party seeking to avoid arbitration. *Id.*

### III. ANALYSIS

Because an arbitration agreement is a contract, "the first question in any arbitration dispute must be: What have these parties agreed to?" *Coinbase, Inc. v. Suski*, 144 S. Ct. 1186, 1192 (2024). As an initial matter, Mr. Mallory concedes that the arbitration agreement is valid, acknowledging that "for the *abbreviated* lease period [in the eighth lease agreement], he would be required to submit any claims that might arise to an arbitrator." [Pl.'s Resp. at 1 (emphasis added)]. In other words, he concedes that the arbitration agreement forecloses his claims under the eighth lease agreement but not the previous seven lease agreements. As the party seeking to compel arbitration, Consumer Safety Technology's stance is broader than Mr. Mallory's; it argues that Mr. Mallory has "agreed to arbitrate *all* his disputes" in his amended complaint. [Def.'s Mem. at 10 (emphasis added)]. To support this argument, it directs the Court to the language in paragraph 18.4 of the arbitration agreement, which states: "[T]he arbitration will take place in the state and county in which you reside. The AAA's consumer arbitration rules will apply." [Eighth Lease Agreement at 9]. Consumer Safety Technology characterizes this

6

language as a delegation provision. [Def.'s Mem. at 10–12]. Mr. Mallory does not appear to dispute that this language constitutes a delegation provision, but he does contest its validity. [Pl.'s Resp. at 13].

The presence of this delegation provision is significant. "[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute," *Mitsubishi Motors Corp*, 473 U.S. at 626, but the FAA "allows parties to agree that an *arbitrator*, rather than a court, will determine 'gateway questions of arbitrability, such as whether the parties have agreed to arbitrate'" a dispute, *Swiger v. Rosette*, 989 F.3d 501, 505 (6th Cir. 2021) (emphasis added) (internal quotation marks omitted) (quoting *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010))). This type of agreement is known as a "delegation clause," and it "requires 'clear and unmistakable' evidence that the parties agreed to have an arbitrator decide' arbitrability." *Id.* (internal quotation marks omitted) (quoting *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 844 (6th Cir. 2020))).[6]

As Consumer Safety Technology rightly argues, the Sixth Circuit has held that the incorporation of the American Arbitration Association's ("AAA's") National Rules for the Resolution of Employment Disputes into an arbitration agreement is clear and unmistakable evidence of parties' intent for an arbitrator to decide the gateway question of arbitrability. *See Blanton*, 962 F.3d at 846 (stating that "district courts in our circuit have long found that the incorporation of the AAA Rules provides 'clear and unmistakable' evidence that the parties agreed to arbitrate 'arbitrability,'" that "every one of our sister circuits to address the question— eleven out of twelve by our count—has found" the same, and that "[t]o the extent that there's

---

[6] This standard of clear and unmistakable evidence effectively "reverses the usual presumption in favor of arbitration when it comes to questions of 'arbitrability.'" *Blanton*, 962 F.3d at 844 (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944–45 (1995)).

any ambiguity in our prior decisions, we officially [join our sister circuits] today" (citations omitted)). Having agreed in paragraph 18.4 that the "AAA's consumer arbitration rules will apply," [Eighth Lease Agreement at 9], Mr. Mallory and Consumer Safety Technology clearly and unmistakably delegated the question of arbitrability to an arbitrator, not the Court. *Id.*[7]

But the fact that the parties have clearly and unmistakably entered into a delegation provision does not mean that delegation provision is "unassailable." *Rent-A-Ctr.*, 561 U.S. at 71. "If a party challenges the validity under § 2 of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that agreement," *id.*, and the same is true for a challenge to the validity of a delegation provision, *see Becker v. Delek U.S. Energy, Inc.*, 39 F.4th 351, 355 (6th Cir. 2022) ("Attacking a delegation provision as invalid turns the question away from arbitrability of gateway issues to the validity of an arbitrator's authority to arbitrate arbitrability. . . . If the validity of a delegation provision is challenged in response to a motion to compel arbitration, then the court, rather than the arbitrator, must address those challenges." (citing *id.*)). In challenging the delegation provision as invalid, however, Mr. Mallory runs into a problem because he challenges it on the same grounds as the broader arbitration agreement: "Plaintiff challenges the validity of the arbitration delegation provision by challenging the validity of the arbitration provision itself." [Pl.'s Resp.

---

[7] Similar to the delegation provision between Mr. Mallory and Consumer Safety Technology, the delegation provision between the parties in *Blanton* stated that "[t]he American Arbitration Association ('AAA') will administer the arbitration and the arbitration will be conducted in accordance with then-current [AAA Rules]." *Blanton*, 962 F.3d at 844–45; *see* [Eighth Lease Agreement at 9 (stating that "any dispute that in any way arises out of or relates to this Lease . . . will be resolved by arbitration by one or more neutral arbitrators before the American Arbitration Association ("AAA")" and "[t]he AAA's consumer arbitration rules will apply")]. The delegation provision in *Blanton* also "helpfully include[d] a link to the AAA's website, from which one can easily access the Rules," as does the delegation provision between Mr. Mallory and Consumer Safety Technology. *Blanton*, 962 F.3d at 845; *see* [Eighth Lease Agreement at 9 ("You can get procedures, rules and fee information from the AAA, which you can find at www.adr.org.")].

8

at 13]; *see* [Def.'s Reply at 6 (arguing that "Mallory has not challenged the delegation clause separate and apart from the underlying Arbitration Agreement")].

A challenge to a delegation provision must be "directed *specifically* to the delegation provision," *Becker*, 39 F.4th at 356 (emphasis added) (quotation omitted), meaning "a party's challenge to a delegation clause must rest, in part, on different factual or legal ground than the ones supporting its challenge to the arbitration agreement as a whole," *id.* (citation omitted). When a party fails to construct a specific challenge to a delegation provision, the Court must treat it as valid, enforce it, and commit the question of arbitrability to an arbitrator. *Id.* And that is exactly what the Sixth Circuit did in *Becker*, and Consumer Safety Technology correctly argues that "[t]he same result is required here." [Def.'s Reply at 2].

In *Becker*, the appellee contested "the existence of an agreement to arbitrate" as well as "any agreement to arbitrate arbitrability," i.e., a delegation provision. *Becker*, 39 F.4th at 355. He "expressly concede[d]," however, "that he [was] challeng[ing] the delegation provision 'on the same grounds he raised to dispute the existence of [the] [arbitration] agreement in general,'" *id.* at 356, and again, Mr. Mallory makes a near-identical concession here, *see* [Pl.'s Resp. at 13 ("Plaintiff challenges the validity of the arbitration delegation provision by challenging the validity of the arbitration provision itself.")]. In light of the appellee's concession, the Sixth Circuit concluded that his "challenge is not 'specific' to the delegation provision" and that "[t]his conclusion requires that we must treat [the delegation provision] as valid," "enforce it," and "leav[e] the question [of] whether [the appellee] can enforce the arbitration agreement for an arbitrator to decide." *Id.* (internal quotation marks omitted) (quoting *Rent-A-Ctr.*, 561 U.S. at 72)). With Mr. Mallory's acknowledgment that he is attacking the delegation provision on the same grounds as the broader arbitration agreement—and in the absence of different factual

9

or legal grounds to show otherwise—Mr. Mallory presents a non-specific challenge to the delegation provision, and it obligates this Court to reach the same conclusion that the Sixth Circuit reached in *Becker*: the delegation provision is valid and enforceable.

Mr. Mallory has one means of recourse: he can escape this conclusion by showing the existence of a genuine issue of material fact as to the formation, as opposed to the enforceability or validity, of the arbitration agreement containing the delegation provision. *See Becker*, 39 F.4th at 355 ("A challenge to arbitration-agreement coverage or enforceability . . . can be trifurcated into whether that challenge is to [1] an arbitration agreement or [2] a delegation provision within the agreement, or [3] both," whereas "[a] challenge to arbitration agreement *formation* is *always* in the jurisdiction of the courts." (emphasis added) (citing *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299–300 (2010))); *see also In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 880 (6th Cir. 2021) (instructing district courts first to "resolve any challenge that pertains to the *formation* or *existence* of the contract containing the delegation provision," and if a contract exists, then to resolve any challenge to the delegation provision's enforceability or validity, but "only if" it is "directed specifically" to the delegation provision (emphasis in original) (quoting *Rent-A-Ctr.*, 561 U.S. at 71–72)).

Mr. Mallory composes four challenges to the arbitration agreement containing the delegation provision: (1) the parties' intent, as "suggest[ed]" by the arbitration agreement's language, shows that the parties "expected" the arbitration agreement to apply only to claims that arose under the eighth lease agreement and not the previous seven lease agreements, [Pl.'s Resp. at 7–8], (2) the arbitration agreement is unconscionable, [*id.* at 2, 8–11], (3) the record lacks clear and unmistakable evidence showing that the parties agreed to arbitrate arbitrability,

10

Case 3:23-cv-00436-JRG-DCP   Document 33   Filed 08/21/24   Page 10 of 14   PageID #: 482

[*id.* at 2, 12, 16],[8] and (4) the arbitration agreement does not "appl[y] retroactively" to claims under the previous seven lease agreements, [*id.* at 2]. Although Mr. Mallory attempts to frame these challenges as ones concerning formation, or "mutual assent" and "consent," as he puts it, [Pl.'s Resp. at 11, 13], the Court does not see them that way, and neither, incidentally, does Consumer Safety Technology, *see* [Def.'s Reply at 6 ("[W]hether the Arbitration Agreement covers Mallory's claims in this case is one of scope, not of contract formation, and is for the arbitrator to decide.")].

An argument as to the formation or existence of a contract concerns "whether it was in fact agreed to" or "was ever concluded," whereas as argument as to the enforceability or validity of a contract concerns "whether it is legally binding," *Rent-A-Ctr.*, 561 U.S. at 69 n.1, 70 n.2. For example, an "'acceptance' argument," i.e., whether a party agreed to a contract's terms, is one of formation. *StockX*, 19 F.4th at 880. Multiple times over, Mr. Mallory admits that he read and signed the lease agreement containing the arbitration agreement and the delegation provision, [Pl.'s Resp. at 1, 2, 5, 10, 12; Pl.'s Decl. ¶¶ 12, 15], and from these admissions, the Court cannot fathom the existence of a genuine issue of material fact as to the issue of acceptance—or, as Mr. Mallory puts it, "mutual assent" or "consent," [Pl.'s Resp. at 11, 13]. Indeed, Mr. Mallory calls on the Court to ascertain the "intention of the parties" by reviewing the arbitration agreement, [Pl.'s Resp. at 15]—a task that the Court could hardly perform if the parties had not formed a valid agreement in the first place.

In the absence of any appreciable arguments against the formation of the arbitration agreement containing the delegation provision, the Court can only conclude that Mr. Mallory's arguments resonate as challenges to its enforceability or validity, and even a cursory review of

---

[8] The Court has already addressed this argument.

11

his challenges fortifies the Court's conclusion. Mr. Mallory's first and fourth arguments, which are iterations of one another, are disputes as to whether the arbitration agreement by its plain terms covers Mr. Mallory's claims under the previous seven leases. Those arguments go to the scope or the coverage of the arbitration agreement, not its formation. *See Anderson v. Charter Commc'ns, Inc.*, 860 F. App'x 374, 377 (6th Cir. 2021) ("[The appellant] raises a 'coverage' claim: He argues that his arbitration agreement with [the appellee] does not cover his specific claims in this suit. . . . [T]hus, the arbitrator must decide whether [the appellant's] claims in this suit fall within the arbitration exclusion[.]"). Mr. Mallory concedes as much. *See* [Pl.'s Resp. at 11 (challenging whether the arbitration agreement applies retroactively versus prospectively and describing this challenge as one going to "its scope")].

As for Mr. Mallory's last-standing argument—i.e., his argument that the arbitration agreement is unconscionable—it cannot avail him either. Although Justice Clarence Thomas once recognized, in a concurring opinion, that the defense of unconscionability "concern[s] the making of an agreement," *Concepcion*, 563 U.S. at 355 n.* (Thomas, J., concurring) (citations omitted), the Supreme Court has held that courts "need not consider" an "unconscionability challenge[]" when it is not "specific to the delegation provision," *Rent-A-Ctr.*, 561 U.S. at 73; *see* [Def.'s Reply at 5–6 (arguing that *Rent-A-Center* is dispositive)]. Again, Mr. Mallory does not attack the delegation provision on grounds separate from those that he uses to attack the broader arbitration agreement, and his failure to do so scuttles his claim of unconscionability. *See Rent-A-Ctr.*, 561 U.S. at 74 ("It may be that had [the respondent] challenged the delegation provision by arguing that . . . *that provision* [is] unconscionable, the challenge should have been considered by the court."); *see also StockX*, 19 F.4th at 886 (concluding that "an arbitrator must . . . decide plaintiffs' argument that the arbitration agreement and delegation provision are

12

procedurally and substantially unconscionable" because "th[is] argument[] do[es] not relate specifically to the delegation provision").[9]

In sum, under the FAA, "a valid delegation provision removes judicial purview and transfers the question of arbitrability to an arbitrator," *Becker*, 39 F.4th at 355, so "once the parties make such an agreement, 'courts must respect the parties' decision as embodied in the contract' and refer all arbitrability questions to arbitration," *McGee v. Armstrong*, 941 F.3d 859, 866 (6th Cir. 2019) (quoting *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019)). Because Mr. Mallory does not specifically attack the delegation provision or successfully challenge the formation of the arbitration agreement containing the delegation provision, the Court will honor the parties' decision to consign the question of arbitrability to an arbitrator.

## IV. CONCLUSION

The parties' arbitration agreement contains a delegation provision, and the record, by clear and unmistakable evidence, establishes that the parties agreed in that delegation provision to reserve the question of arbitrability for an arbitrator, not the Court. As the party opposing arbitration, Mr. Mallory does not a muster a specific challenge to the delegation provision, and he does not demonstrate the existence of a genuine issue of material fact as to whether he and Consumer Safety Technology agreed to, or formed, the arbitration agreement containing the delegation provision. The Court therefore **ORDERS** as follows:

1. Consumer Safety Technology's Motion to Compel Arbitration [Doc. 24] is **GRANTED**;

---

[9] Mr. Mallory also argues that the arbitration agreement's class-action waiver is unconscionable, [Pl.'s Resp. at 14–15], but this argument likewise does not "relate specifically" to the delegation provision. *StockX*, 19 F.4th at 886.

13

2. Mr. Mallory is hereby **COMPELLED** to submit his claims to arbitration, according to the terms of the parties' arbitration agreement in the eighth lease agreement;

3. This action is **STAYED** as to all claims and matters at issue between the parties. 9 U.S.C. § 3; *see Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding."); *see also* [Def.'s Mot. at 1 (moving the Court "to dismiss the amended complaint *or in the alternative* to stay proceedings pending the resolution of arbitration" (emphasis added))]; and

4. The parties are **ORDERED** to file a status report with the Court within 120 days of this Order's date and every 120 days thereafter.

So ordered.

ENTER:

s/J. RONNIE GREER<br>UNITED STATES DISTRICT JUDGE